**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

FFC MORTGAGE CORP.,

                  Plaintiff,

        vs.

STEVEN LO BUE, BRIAN KELLY, and
SHAF KAMAL,

                  Defendants.

Case No.: 6:19-cv-06420 (MAT)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS LO BUE AND KELLY'S MOTION TO DISMISS AND COMPEL ARBITRATION

FILOSA GRAFF LLP
111 John Street, Suite 2510
New York, NY 10038
Tel: (212) 203-3473
Fax: (212) 256-1781
agraff@filosagraff.com

*COUNSEL FOR DEFENDANT*
*STEVEN LO BUE*

CARCICH O'SHEA, LLC
411 Hackensack Ave., 2nd Floor
Hackensack, NJ 07601
Tel: (201) 988-1308
Fax: (201) 338-7966
ccarcich@carcichoshea.com

*COUNSEL FOR DEFENDANT*
*BRIAN KELLY*

## Table of Contents

TABLE OF AUTHORITIES ................................................................................. II

FACTUAL BACKGROUND ................................................................................. 1

   I.   LO BUE AND KELLY'S EMPLOYMENT AND ARBITRATION AGREEMENTS WITH FFC .................................................................................................. 1

   II.  PRIOR ARBITRATION OF FFC'S CLAIMS IN THIS ACTION ........................... 4

ARGUMENT ..................................................................................................... 5

   I.   THE VARIOUS STANDARDS FOR DISMISSAL BASED ON EXISTENCE OF BINDING ARBITRATION AGREEMENTS DEMONSTRATE THAT DEFENDANTS' MOTION SHOULD BE GRANTED ......................................................... 5

      A.   Dismissal Under Rules 12(b)(1) and 12(b)(6) ......................................... 5

      B.   Mandatory Arbitration Under the FAA ................................................... 6

   II.  FFC'S CLAIMS AGAINST DEFENDANTS SHOULD BE DISMISSED PURSUANT TO THE PARTIES' ARBITRATION AGREEMENTS ................................. 7

      A.   The Arbitration Provision Permits Litigation on Injunctive Relief Only ............. 10

      B.   Even If the Arbitration Agreements Ever Did Permit FFC to Elect Between Litigation or Arbitration, FFC Has Already Elected to Arbitrate These Claims ......... 11

      C.   Whether the Claims Are Within the Scope of the Arbitration Agreements Should Be Determined by an Arbitrator in the First Instance ................................... 12

CONCLUSION ................................................................................................. 13

**Table of Authorities**

CASES

Apollo Computer, Inc. v. Berg, 886 F.2d 469 (1st Cir. 1989) ..................................... 13

Aramony v. United Way of Am., 254 F.3d 403 (2d Cir. 2001) .................................... 11

Cox v. Perfect Bldg. Maint. Corp., 2017 U.S. Dist. LEXIS 111202 (S.D.N.Y. 2017).......... 6

CPR (USA) Inc. v. Spray, 187 F.3d 245 (2d Cir. 1999) ........................................ 6, 11

Fed. Ins. Co. v. Metro. Transp. Auth., 2018 U.S. Dist. LEXIS 183352 (S.D.N.Y. 2018) ........... 5

Garten v. Kurth, 265 F.3d 136 (2d Cir. 2001) ................................................. 6

Goldberg v. Sovereign Bancorp, Inc., 2011 WL 13261837 (S.D.N.Y. 2011) ........................... 5

J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107 (2d Cir. 2004) ........................... 6

JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163 (2d Cir. 2004) ................................... 7

John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co., 717 F.2d 664 (2d Cir. 1983)  11

Jordan-Rowell v. Fairway Supermarket, 2019 U.S. Dist. LEXIS 8696 (S.D.N.Y. 2019).............. 5

LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195 (2d Cir. 2005) ............ 10

Louis Dreyfus Negoce S.A. v. Blystad Shipping, 252 F.3d 218 (2d Cir. 2001)............... 10

LTV Aerospace & Def. Co. v. Thomson-CSF, S.A. (In re Chateaugay Corp.), 198 B.R. 848
    (S.D.N.Y. 1996) ........................................................................ 11

Makarova v. United States, 201 F.3d 110 (2d Cir. 2000) ........................................ 6

Tannatt v. Varonis Sys., 2019 U.S. Dist. LEXIS 27325 (D. Mass. 2019) ................... 13

Triarch Indus. v. Crabtree, 158 S.W.3d 772 (Mo. 2005) ....................................... 12

Tyler v. City of New York, 2006 U.S. Dist. LEXIS 29650, 2006 WL 1329753 (E.D.N.Y. 2006) 5

*Veliz v. Collins Bldg. Servs., Inc.*, 2011 U.S. Dist. LEXIS 109351 (S.D.N.Y. 2011) ................... 5

Welborn Clinic v. MedQuist, Inc., 301 F.3d 634 (7th Cir. 2002).................................. 12

WorldCrisa Corp. v. Armstrong, 129 F.3d 71 (2d Cir.1997)..................................... 6

STATUTES

9 U.S.C. § 1 ..................................................................... 1, 5, 6

9 U.S.C. § 3 ....................................................................... 7

9 U.S.C. § 4 ....................................................................... 6

RULES

Fed. R. Civ. P. 12(b)(1).......................................................... 1, 5

Fed. R. Civ. P. 12(b)(6)......................................................... 1, 5, 6

Fed. R. Evid. 201(b)................................................................ 6

Defendants Steven Lo Bue ("Mr. Lo Bue") and Brian Kelly ("Mr. Kelly") (together, "Defendants"), through their respective counsel, respectfully submit this memorandum of law in support of their motion to dismiss the claims asserted against them in this action by Plaintiff FFC Mortgage Corp. ("FFC"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and to compel arbitration of any claims against them by FFC, pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"). As set forth below, Defendants' motions should be granted because Plaintiff's claims against Defendants are within the scope of Defendants' respective Arbitration Agreements with FFC, and because FFC has previously submitted the *same* claims to arbitration thereunder.

## FACTUAL BACKGROUND

### I.    LO BUE AND KELLY'S EMPLOYMENT AND ARBITRATION AGREEMENTS WITH FFC

Messrs. Lo Bue and Kelly were employed by Plaintiff FFC from in or around 2015 to 2017 (*see* Amended Complaint, ECF Doc. #1-3 ("Amd. Compl.") ¶¶ 7-8).[1] As a condition of their employment, Lo Bue and Kelly each entered into employment agreements with FFC in 2015 (the "Employment Agreements"), which were substantively similar, save for specific compensation details (*see* Amd. Compl. ¶¶ 12, 14); *see also* Graff Decl. ¶¶ 3-4 and Ex. A [Lo Bue Employment Agreement]; Carcich Decl. ¶ 3 and Ex. A [Kelly Employment Agreement].[2]

---

[1]    FFC is a residential mortgage lending company organized under the laws of New York State with a principle place of business located in Rochester, New York (*see* Amd. Compl. ¶ 6). Mr. Lo Bue was employed as a Branch Manager, and Mr. Kelly as a Mortgage Loan Officer (*see* Amd. Compl. ¶¶ 7-8).

[2]    "Graff Decl. __" and "Carcich Decl. __" refer, respectively, to the accompanying Declarations of Ariel Y. Graff and Christopher J. Carcich in support of this motion.

As alleged in the Amended Complaint, the Employment Agreements each include a non-solicitation covenant (Article IV), a confidentiality provision (Article V) and a return of confidential information provision (Article VI) (*see* Amd. Compl. ¶¶ 21-24; Graff Decl. Ex. A;[3] Carcich Decl. Ex. A).

Although not stated in the Amended Complaint, the Employment Agreements also include a broad, mandatory arbitration provision (Article XVI), which provides in pertinent part as follows:

> **XVI. ARBITRATION**
>
> The Employee acknowledges and agrees that any and all disputes or claims relating to or arising out of the Employee's performance of services for the Company or otherwise, or the termination of same, or any future dispute concerning this Agreement or any alleged breach thereof, or any future dispute of any kind whatsoever between the Employee and the Company, including any parent, subsidiary or related corporations, officers, shareholders, employees, directors, representatives or agents, including but not limited to statutory claims of employment discrimination, harassment or retaliation arising under the New York Law the Employee Retirement Income Security Act ("ERISA"); Title VII of the Civil Rights Act of 1964 ("Title VII"); the Age Discrimination in Employment Act ("ADEA"); the Americans With Disabilities Act ("ADA"); the Older Workers Benefit Protection Act ("OWBPA"); the Worker Adjustment and Retraining Notification Act ("WARN"); the Family and Medical Leave Act ("FMLA"), State wage and hour laws, the United States Constitution and the New York Constitution and any other federal, state or local statutory employment law, or claims of any nature based on contract or tort (except for any dispute involving the Employee's alleged breach of the obligations contain in paragraphs IV through VI which may be raised in a court of law) shall be submitted and resolved by final and binding arbitration before the American Arbitration Association ("AAA"), with the prevailing party to recover costs and reasonable attorneys' fees. Either party shall be entitled to commence the arbitration proceeding directly with the AAA within the statute of limitations governing each claim and, after appropriate notice to the other party, the AAA shall proceed to hear and decide the matter even if any party so notified of the proceeding should refuse to participate. . . . The parties shall have the right to engage in the limited discovery required by law as determined by the neutral arbitrator. The neutral arbitrator shall

---

[3]    Although not relevant to this motion, the Lo Bue Employment Agreement reflects a handwritten addendum to Article IV.

be authorized to award the full range of relief available in a civil action. The arbitrator will also be required to issue a written decision setting forth essential findings and conclusions. The Employee acknowledges that s/he is aware of state and federal administrative agencies and courts before which the Employee can assert the claims described in this paragraph, and that by agreeing to arbitrate all claims, the Employee voluntarily waives any right to bring them before such agencies or courts. **THE EMPLOYEE SPECIFICALLY UNDERSTANDS AND CONSENTS THAT ANY AND ALL DISPUTES SHALL BE SUBMITTED TO ARBITRATION AND HEREBY KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY WAIVES ALL RIGHTS TO A JUDICIAL DETERMINATION OF THESE MATTERS, INCLUDING THE RIGHT TO A TRIAL BY JURY.**

(Graff Decl. Ex. A, at 5-6; Carcich Decl. Ex. A, at 5-6) (**bold and ALL CAPS** in original).

The Arbitration provision is immediately followed by Article XVII, which is titled "Injunctive Relief" and provides in pertinent part as follows:

> **Notwithstanding the terms contained within the foregoing Section XVI, the Employee hereby acknowledges and agrees that any violation or threatened violation of Sections IV through VI of this Agreement, including each of their subparts, will cause immediate and irreparable harm, injury and damage to the Company for which there exists no adequate remedy at law. Accordingly, the Employee acknowledges that the remedies of injunctive relief and specific performance shall be available to the Company in the event of any such violation or threatened violation of Sections IV through VI of this Agreement**, in addition to money damages or other legal or equitable remedies and further consents to the personal jurisdiction and venue of the federal and state courts located within New York. The Employee also acknowledges that: (i) in the event of any action in which the Company enforces or defends the terms of Sections IV through VI of this Agreement or (ii) should the Company undertake any efforts to defend, confirm or declare the validity of such terms, the Company shall be entitled to recover from the Employee all reasonable attorneys' fees and the costs incurred in prosecuting or defending such action or engaging in such efforts.

(Graff Decl. Ex. A, at 6; Carcich Decl. Ex. A, at 6) (emphasis added).

In late November 2017, Lo Bue and Kelly resigned their employment with FFC (Amd. Compl. ¶ 25).

///

3

## II.      PRIOR ARBITRATION OF FFC'S CLAIMS IN THIS ACTION

Following their resignations, Lo Bue and Kelly each independently filed Demands for Arbitration against FFC (and its principal, Thomas Flaherty) with the American Arbitration Association ("AAA") — in accordance with the above-quoted arbitration provisions of their respective Employment Agreements — seeking recovery of wages that FFC allegedly withheld from them in violation of the New York Labor Law and their Employment Agreements. (*See* Graff Decl. ¶¶ 4-5 and Ex. B [FFC Answer and Countercl. to Lo Bue Demand for Arb.]; Carcich Decl. ¶¶ 4-5 and Ex. B [FFC Answer and Countercl. to Kelly Demand for Arb.]).

In response to the Demands for Arbitration filed by Lo Bue and Kelly, FFC filed counterclaims against each of them, alleging causes of action for Breach of Contract and Breach of Fiduciary duty (*see* Graff Decl. Ex. B; Carcich Decl. Ex. B). With respect to its breach of contract claim, FFC alleged that Kelly breached Article IV (Restrictive Covenants), and that Kelly and Lo Bue each breached Article V (Non-Disclosure of Confidential Information) and Article VI (Return of Confidential Information) of their respective Employment Agreements. (Graff Decl. Ex. B, at 2-4; Carcich Decl. Ex. B).

The allegations, causes of action, and elements of damages and other relief set forth in the Counterclaims against Lo Bue and Kelly are substantially identical to the allegations, causes of action, and elements of damages and other relief set forth in FFC's Amended Complaint in *this* action (*compare* Amd. Compl., *with* Graff Decl. Ex. B *and* Carcich Decl. Ex. B).

FFC ultimately stated on the record at its arbitration hearing with Mr. Lo Bue that it was withdrawing its counterclaims (*see* Graff Decl. Ex. C [Final Award], at 12). FFC nevertheless sought substantial attorneys' fees in connection with lengthy discovery efforts undertaken in furtherance of its counterclaims (*see id.* at 10, 12).

///

4

# ARGUMENT

## I.   THE VARIOUS STANDARDS FOR DISMISSAL BASED ON EXISTENCE OF BINDING ARBITRATION AGREEMENTS DEMONSTRATE THAT DEFENDANTS' MOTION SHOULD BE GRANTED

"Although the end result 'would be the same under nearly any of the available mechanisms,' *Veliz v. Collins Bldg. Servs., Inc.*, No. 10-cv-6615 (RJH), 2011 U.S. Dist. LEXIS 109351 (S.D.N.Y. Sept. 26, 2011), it is unsettled, in this Circuit, whether a motion to dismiss a complaint based on the existence of a binding arbitration agreement should be made under Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure, or under the Federal Arbitration Act." *Jordan-Rowell v. Fairway Supermarket*, No. 18-cv-1938 (VEC)(DF), 2019 U.S. Dist. LEXIS 8696, at *18 (S.D.N.Y. Jan. 16, 2019) (citations omitted); *see also Fed. Ins. Co. v. Metro. Transp. Auth.*, 2018 U.S. Dist. LEXIS 183352, at *6 (S.D.N.Y. Oct. 24, 2018) (declining to "resolve that ambiguity here as the result would be the same under nearly any of the available mechanisms"); *Tyler v. City of New York*, No. 05 Civ. 3620, 2006 U.S. Dist. LEXIS 29650, 2006 WL 1329753, at *2 (E.D.N.Y. May 16, 2006) (collecting cases variously dismissed under Rules 12(b)(1), 12(b)(6), and the FAA). Here too, dismissal should be granted based on each of the three legal standards alike.

### A.  Dismissal Under Rules 12(b)(1) and 12(b)(6)

An action should be dismissed pursuant to Rule 12(b)(1) where it is apparent that the court lacks subject matter jurisdiction to hear the case. *See* Fed. R. Civ. P. 12(b)(1); *see also Goldberg v. Sovereign Bancorp, Inc.,* No. 10-cv-6263 (DAB), 2011 WL 13261837, at *2 (S.D.N.Y. Aug. 19, 2011) ("When an enforceable arbitration agreement covers the claims asserted in a lawsuit, the court lacks subject-matter jurisdiction over the dispute …."). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the

evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). While, on a Rule 12(b)(1) motion, a court should accept all material factual allegations in the complaint as true, the court is "not to draw inferences from the complaint favorable to plaintiffs" on such a motion. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

A complaint may be dismissed pursuant to Rule 12(b)(6) where it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Although a court must normally confine its analysis of a 12(b)(6) motion to the facts alleged in the plaintiff's complaint, the Court may take judicial notice of facts outside of the pleadings, provided that those facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Cox v. Perfect Bldg. Maint. Corp.*, No. 16-cv-7474 (VEC), 2017 U.S. Dist. LEXIS 111202 (S.D.N.Y. July 18, 2017) (quoting Fed. R. Evid. 201(b)) (noting that "courts have regularly taken judicial notice of arbitration awards and collective bargaining agreements in considering a motion to dismiss or to compel arbitration").

### B. Mandatory Arbitration Under the FAA

The FAA, 9 U.S.C. § 1 *et seq.*, reflects a liberal policy favoring enforcement of arbitration agreements and grants district courts authority to compel arbitration where the parties have agreed to arbitrate. *See* 9 U.S.C. § 4; *see also Garten v. Kurth*, 265 F.3d 136, 142 (2d Cir. 2001) (Under the FAA, courts are required generally to resolve questions of arbitrability in favor of arbitration.); *CPR (USA) Inc. v. Spray*, 187 F.3d 245, 254 (2d Cir. 1999) ("The existence of a broad agreement to arbitrate…creates a presumption of arbitrability, which is overcome only if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'") (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir.1997)). The FAA also grants

authority to district courts to stay an action commenced in federal court pending the outcome of arbitration. *See* 9 U.S.C. § 3.

## II.     FFC'S CLAIMS AGAINST DEFENDANTS SHOULD BE DISMISSED PURSUANT TO THE PARTIES' ARBITRATION AGREEMENTS

In determining whether to compel arbitration, the Second Circuit has instructed that a court is obliged to consider four factors: (1) whether there has been an agreement to arbitrate; (2) whether the scope of the arbitration agreement covers the dispute at issue; (3) if federal statutory claims exist, whether Congress intended those claims to be non-arbitrable; and (4) if only some of the claims are subject to arbitration, whether the court should stay the remaining claims pending arbitration. *See JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).

In this case, the only question that FFC might foreseeably dispute is whether the scope of the agreements in question properly encompasses the instant claims as against Defendants Lo Bue and Kelly. Yet, the Arbitration provisions specify that arbitration shall be mandatory with respect to the broadest spectrum of disputes, readily encompassing those at issue in this litigation, based on the following broadly defined scope of arbitrable claims:

- "[A]ny and all disputes or claims relating to or arising out of the Employee's performance of services for the Company or otherwise, or the termination of same, or any future dispute concerning this Agreement or any alleged breach thereof, or any future dispute of any kind whatsoever between the Employee and the Company . . . ." (Graff Decl. Ex. A, at 5; Carcich Decl. Ex. A, at 5); and

- **THE EMPLOYEE SPECIFICALLY UNDERSTANDS AND CONSENTS THAT ANY AND ALL DISPUTES SHALL BE SUBMITTED TO ARBITRATION AND HEREBY KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY WAIVES ALL RIGHTS TO A JUDICIAL DETERMINATION OF THESE MATTERS, INCLUDING THE RIGHT TO A TRIAL BY JURY. (**Graff Decl. Ex. A, at 6; Carcich Decl. Ex. A, at 6) (**bold and ALL CAPS** in original).

7

Despite the foregoing language — and notwithstanding the fact that FFC has, itself, already submitted its claims in this litigation for arbitration pursuant to the arbitration provision of the Employment Agreements — FFC may argue that a parenthetical statement contained within the following (lengthy) sentence of the Arbitration provision somehow entitles it to elect to pursue both arbitration *and* litigation, either seriatim or successively, on the same claims at issue:

> The Employee acknowledges and agrees that any and all disputes or claims relating to or arising out of the Employee's performance of services for the Company or otherwise, or the termination of same, or any future dispute concerning this Agreement or any alleged breach thereof, or any future dispute of any kind whatsoever between the Employee and the Company, including any parent, subsidiary or related corporations, officers, shareholders, employees, directors, representatives or agents, including but not limited to statutory claims of employment discrimination, harassment or retaliation arising under the New York Law the Employee Retirement Income Security Act ("ERISA"); Title VII of the Civil Rights Act of 1964 ("Title VII"); the Age Discrimination in Employment Act ("ADEA"); the Americans With Disabilities Act ("ADA"); the Older Workers Benefit Protection Act ("OWBPA"); the Worker Adjustment and Retraining Notification Act ("WARN"); the Family and Medical Leave Act ("FMLA"), State wage and hour laws, the United States Constitution and the New York Constitution and any other federal, state or local statutory employment law, or claims of any nature based on contract or tort (<u>except for any dispute involving the Employee's alleged breach of the obligations contained in paragraphs IV through VI which *may* be raised in a court of law</u>) shall be submitted and resolved by final and binding arbitration before the American Arbitration Association ("AAA"), with the prevailing party to recover costs and reasonable attorneys' fees.

**(**Graff Decl. Ex. A, at 6; Carcich Decl. Ex. A, at 6) (emphasis added).

The Court should reject such an interpretation, however, and find that the claims at issue are encompassed by the parties' arbitration agreements for at least the following three reasons:

*First*, the parenthetical reference to claims for non-solicitation and confidentially that "may" be brought in court is cabined by the following provision of the arbitration agreement,

8

which specifically clarifies that FFC may seek *injunctive relief in court* on precisely those claims. If the parenthetical were intended to categorically open such claims to litigation (in lieu of arbitration) more broadly, the far more detailed description of the precise nature of court litigation at issue would be rendered superfluous—and a contract should not be construed so as to render any of its provisions superfluous, nor should broad, general language be given precedence over more specific language in the same contract.

*Second*, even assuming, arguendo, that the arbitration provision *did* permit FFC to litigate those claims before a court in full (rather than only as to preliminary injunctive relief), FFC has already affirmatively submitted and litigated these same claims before an arbitrator. Having chosen its venue, there is no basis for FFC to now try to leverage a "second bite at the apple" and somehow pursue the claims in *both* arbitration *and* before this court, whether concurrently (as in the case of Defendant Kelly, whose arbitration is still pending), or successively (as in the case of Defendant Lo Bue, wherein FFC withdrew its counterclaims at the final arbitration hearing).

*Third*, and finally, the arbitration provisions incorporate the AAA Employment Arbitration Rules, pursuant to which the "*arbitrator* shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."[4] Thus, even if FFC disputes the scope of the arbitration provision in relation to this action, the resolution of that dispute is expressly entrusted to an arbitrator to determine in the first instance.

///

---

[4]     *See* Rule 6, AAA Employment Arbitration Rules and Mediation Procedures (effective Nov. 1, 2009; fee schedule amended and effective July 1, 2016), available at https://www.adr.org/sites/default/files/EmploymentRules_Web2119.pdf ("AAA Employment Rules").

### A.  The Arbitration Provision Permits Litigation on Injunctive Relief Only

Although the arbitration agreements provide that "any and all disputes or claims relating to or arising out of the Employee's performance of services for the Company or otherwise, or the termination of same, or any future dispute concerning this Agreement or any alleged breach thereof, or any future dispute of any kind whatsoever between the Employee and the Company" shall be submitted to arbitration; and furthermore conspicuously state in bold and all capitalized text that "ANY AND ALL DISPUTES SHALL BE SUBMITTED TO ARBITRATION", FFC may nevertheless argue that the parenthetical reference to court for breach of Articles IV to VI entitles it to litigate those claims on their merits in court. *Cf. Louis Dreyfus Negoce S.A. v. Blystad Shipping*, 252 F.3d 218, 224 (2d Cir. 2001) (citations omitted) ("Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it."); *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35-36 (2d Cir. 2002) (classifying clause requiring arbitration of "all disputes relating to th[e] Agreement (excepting any dispute relating to intellectual property rights)" as "broad").

Moreover, the intent to limit the broad scope of the arbitration provision and presumptive arbitrability of *all* claims to only the narrow category of actions for preliminary injunctive relief is manifest in the following paragraph of the Employment Agreement, which specifies that such claims can be brought in court for purposes of pursuing injunctive relief. If the claims could be brought in court under all circumstances, the injunctive relief paragraph would be rendered superfluous, and thus should not be so construed. *See LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) ("An interpretation of a contract that has the

effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible.") (citation omitted).

It is also a fundamental principle of contract interpretation that "definitive, particularized contract language takes precedence over expressions of intent that are general, summary, or preliminary." *LTV Aerospace & Def. Co. v. Thomson-CSF, S.A. (In re Chateaugay Corp.)*, 198 B.R. 848, 855 (S.D.N.Y. 1996) (quoting *John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co.*, 717 F.2d 664, 669 n.8 (2d Cir. 1983). "Even where there is no 'true conflict' between two provisions, 'specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate.'" *Aramony v. United Way of Am.*, 254 F.3d 403, 413-14 (2d Cir. 2001) (citations omitted).

Thus, the brief parenthetical reference to litigation of certain claims in the arbitration provision should be read in light of the Employment Agreement as a whole, which manifests a clear intent to mandate arbitration broadly for all causes of action—with the limited exception of actions for preliminary injunctive relief, which are not at issue here. This conclusion is reinforced by the presumption in favor of arbitrability, which adheres unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" and works from the premise that any "[d]oubts should be resolved in favor of coverage." *Spray*, 187 F.3d at 254 (2d Cir. 1999).

**B.  Even If the Arbitration Agreements Ever Did Permit FFC to Elect Between Litigation or Arbitration, FFC Has Already Elected to Arbitrate These Claims**

Even assuming, arguendo, that the arbitration provision could be properly construed in favor of granting FFC the choice that it "may" elect to litigate *or* arbitrate certain claims (which as set forth above, it does not), there is nothing in the Employment Agreements to suggest that

FFC is free to choose to arbitrate and then (when unsatisfied with its prosecution of those claims in arbitration), to subsequently elect to proceed with the same claims in court. *Cf. Triarch Indus. v. Crabtree*, 158 S.W.3d 772, 777 (Mo. 2005) ("The contract at issue plainly states that the [plaintiff] has the right to refer the matter to arbitration or to commence litigation, not that it can do one and then the other, seriatim"). An interpretation of the Employment Agreements' arbitration provision that would allow FFC to do so would also run grossly counter to the interests of efficiency and economy that are the core, animating premise of arbitration in the first instance. *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002) ("[W]e do not want parties to forum shop, taking a case to the courts and then, if things go poorly there, abandoning their suit in favor of arbitration.").

Permitting FFC to test the waters in arbitration, and only then elect to *also* pursue the same claims in court would undermine the purposes of arbitration and needlessly multiply and duplicate proceedings to the disadvantage of Defendants and the judicial system alike. The Court should therefore dismiss the claims as against Defendants Lo Bue and Kelly in this action, because they are encompassed by the parties' Arbitration agreement — as FFC acknowledged and confirmed by previously submitting the claims to arbitration.

### C.  Whether the Claims Are Within the Scope of the Arbitration Agreements Should Be Determined by an Arbitrator in the First Instance

The arbitration provisions in the parties' Employment Agreements incorporate the AAA Employment Arbitration Rules, pursuant to which the "*arbitrator* shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Rule 6, AAA Employment Arbitration Rules (citation at fn.4, *supra*). Thus, even if FFC disputes the scope of the arbitration provision in relation to this action, the resolution of that dispute is expressly entrusted to an arbitrator to determine in the

first instance. *Tannatt v. Varonis Sys.*, No. 18-cv-12589 (JGD), 2019 U.S. Dist. LEXIS 27325, at *15 (D. Mass. Feb. 21, 2019) ("By incorporating the JAMS Rules into the arbitration provision, the parties agreed to be bound by rules that clearly and unmistakably provide for the arbitrator to determine arbitrability.") (citing *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473-74 (1st Cir. 1989) (holding that an arbitration provision's incorporation of International Chamber of Commerce rules, which provide arbitrators with authority to decide arbitrability, constituted clear and unmistakable evidence)). Thus, this action should be dismissed pending a determination to the contrary by a AAA arbitrator.

## CONCLUSION

For the foregoing reasons (and those that may be set forth in a reply memorandum of law), Defendants Lo Bue and Kelly respectfully request dismissal of the claims asserted against them in this action, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and to compel arbitration of any claims against them by FFC, pursuant to the FAA.

Dated: New York, NY
June 21, 2019

Respectfully submitted,

By: _Ariel Y. Graff_                           By: /s/ _____
     Ariel Y. Graff                                    Christopher J. Carcich

Filosa Graff LLP                              Carcich O'Shea, LLC
111 John Street, Suite 2510                   411 Hackensack Ave., 2nd Floor
New York, NY 10038                            Hackensack, NJ 07601
Tel: (212) 203-3473                           Tel: (201) 988-1308
Fax: (212) 256-1781                           Fax: (201) 338-7966
agraff@filosagraff.com                        ccarcich@carcichoshea.com

*Counsel for Defendant Steven Lo Bue*         *Counsel for Defendant Brian Kelly*

13