```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

FFC MORTGAGE CORP.,

                Plaintiff,

v.

                                    **DECISION AND ORDER**

STEVEN LO BUE,                       6:19-CV-06420-MAT
BRIAN KELLY, and
SHAF KAMAL,

                Defendants.
_____

## **INTRODUCTION**

Plaintiff FFC Mortgage Corporation ("Plaintiff" or "FFC") brings this action against defendants Steven Lo Bue, Brian Kelly, and Shaf Kamal, alleging several causes of action, including breach of contract, breach of fiduciary duty, unfair competition, unjust enrichment, aiding and abetting, and tortious interference with contract. Docket No. 1-3.

Presently before the Court is defendant Lo Bue's and defendant Kelly's (collectively, "Defendants") motion to dismiss Plaintiff's amended complaint for failure to state a claim and for lack of subject matter jurisdiction pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, and/or to compel arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*. (the "FAA").[1] Docket No. 6. For the reasons set forth below, Defendants' motion is denied.

---

[1] Defendant Kamal has not yet appeared in this action.

## BACKGROUND

Unless otherwise noted, the following facts are taken, in relevant part, from Plaintiff's amended complaint (Docket No. 1-3).

Plaintiff, a residential mortgage lending company, entered into employment agreements with Defendants beginning in 2015. *Id*. ¶¶ 6, 14. Defendant Lo Bue was hired as a "non-producing branch manager," and defendant Kelly was hired as a mortgage loan officer. *Id*. ¶¶ 15, 17. Defendants worked in Plaintiff's Paramus, New Jersey branch office. *Id*. ¶¶ 7, 8.

The employment agreements made clear that Defendants "occup[ied] a position of trust" at FFC, and included a non-solicitation provision. *Id*. ¶¶ 19, 20. The employment agreements also required the non-disclosure and return of confidential information. *Id*. ¶¶ 21, 24.

In late 2016 and early 2017, Defendants began communicating with rival home mortgage lending companies, with the intent to leave FFC for a rival employer. *Id*. ¶ 27. Defendants also arranged for the defecting of thirteen FFC-Paramus employees to the rival employer. *Id*. At some point in 2017, Defendants decided that AnnieMac would be the new employer of the FFC-Paramus branch. *Id*. ¶ 32. Defendants continued to solicit other FFC-Paramus staff to leave FFC for AnnieMac, including by providing them with AnnieMac's benefits package, sending them links to online AnnieMac employment applications, and directing them to prepare resignation letters. *Id*. ¶¶ 32-37. Defendants notified the CEO of FCC, Thomas

Flaherty, of their intent to resign "effective almost immediately," on November 27, 2017.  *Id*. at ¶ 25.

On November 30, 2017, Defendants began arranging for the transfer of FFC's confidential information, including e-mails and other data, with the help of defendant Kamal, an outside vendor who performed monthly IT work for the FFC-Paramus branch.  *Id*. ¶¶ 46-52, 60.  Effective December 1, 2017, Defendants began working for AnnieMac, but in the same Paramus, New Jersey office space they had worked in while employed by FFC.  *Id*. ¶ 55.  Defendants continued utilizing FFC's confidential information, and did not return this information following their departure from FFC.  *Id*. ¶¶ 59, 73.

After learning of Defendants' misappropriation of its confidential information, FFC conducted a retrospective analysis of the activities of the FFC-Paramus branch.  *Id*. ¶ 62.  FFC found that Defendants, knowing that they would be leaving FFC, engaged in several acts which adversely affected the profitability of FFC, for their own personal gain.  *Id*. ¶¶ 63-68.  Defendants' actions amounted to a violation of their employment contracts.  *Id*. ¶¶ 70-73.

## PROCEDURAL HISTORY

Plaintiff filed this action in Monroe County Supreme Court on April 23, 2019, alleging claims against defendants Steven Lo Bue, Shawn Miller, Brian Kelly, and Shaf Kamal.  Docket No. 1 at 1; *see also* Docket No. 1-2.  On May 8, 2019, Plaintiff filed an amended

complaint, eliminating Mr. Miller as a defendant.  *See* Docket No. 1 at 1; *see also* Docket No. 1-3.  The amended complaint asserts six causes of action, including (1) breach of contract, against defendants Lo Bue and Kelly; (2) breach of fiduciary duty, against defendants Lo Bue and Kelly; (3) unfair competition, against defendants Lo Bue and Kelly; (4) unjust enrichment, against defendants Lo Bue and Kelly; (5) aiding and abetting breach of fiduciary duty, against defendant Kamal; and (6) tortious interference with contract, against defendant Kamal.  Docket No. 1 at 2; *see also* Docket No. 1-3.  Defendant Kamal filed an answer to the amended complaint on May 23, 2019.  Docket No. 1-5.

On June 7, 2019, defendant Lo Bue filed a notice of removal, seeking removal of the case to federal court based on a diversity of citizenship between the parties.  *See* Docket No. 1.  Defendant Lo Bue also filed in Monroe County Supreme Court a Notice to Adverse Party of Removal to Federal Court, on June 7, 2019.  Docket No. 1-6.

On June 21, 2019, defendants Lo Bue and Kelly filed a motion to dismiss the amended complaint.  Docket Nos. 6-9.  Plaintiff filed its response on July 8, 2019.  Docket No. 11.  Defendants filed their reply on July 15, 2019.  Docket Nos. 13-15.

**DISCUSSION**

**I. Standards**

"[I]t is unsettled, in this Circuit, whether a motion to dismiss a complaint based on the existence of a binding arbitration agreement should be made under Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure, or under the Federal Arbitration Act ("FAA")." *Jordan-Rowell v. Fairway Supermarket*, No. 18cv01938(VEC)(DF), 2019 WL 570709, at *7 (S.D.N.Y. Jan. 16, 2019) (citations omitted), *adopted*, 2019 WL 568966 (S.D.N.Y. Feb. 12, 2019). Accordingly, the standards for each motion are explained below.

**A. Fed. R. Civ. P. 12(b)(6)**

To withstand a Rule 12(b)(6) motion to dismiss, the complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

relief." *Id.* (internal citations and quotation marks omitted). Determining whether a complaint meets the plausibility standard is "context-specific" and requires that the court "draw on its judicial experience and common sense." *Id.* at 679.

**B.   Fed. R. Civ. P. 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (quotation omitted). "When considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court must assume as true the factual allegations set forth in the complaint." *Freeman v. Kirisits*, No. 16-CV-06668, 2017 WL 475679, at *3 (W.D.N.Y. Feb. 6, 2017). "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett,* 290 F.3d at 496.

**C.   The Federal Arbitration Act**

The FAA, 9 U.S.C. § 1 *et seq.*, reflects a liberal policy favoring enforcement of arbitration agreements and grants district courts the authority to compel arbitration where the parties have agreed to arbitrate. *See* 9 U.S.C. § 4; *see also Garten v. Kurth*, 265 F.3d 136, 142 (2d Cir. 2001) ("Under the FAA, courts are required generally to resolve questions of arbitrability in favor

of arbitration."); *CPR (USA) Inc. v. Spray*, 187 F.3d 245, 254 (2d Cir. 1999) ("The existence of a broad agreement to arbitrate . . . creates a presumption of arbitrability, which is overcome only if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'") (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)). The FAA also grants authority to the district court to stay an action commenced in federal court pending the outcome of arbitration. *See* 9 U.S.C. § 3.

"[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability, regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration." *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). The summary judgment standard, set forth in Fed. R. Civ. P. 56(c), provides that summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *see also Bensadoun*, 316 F.3d at 175-78; *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). If the moving party has "substantiated the entitlement [to compel arbitration] by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be

tried." *See Oppenheimer*, 56 F.3d at 358; *see also Bensadoun*, 316 F.3d at 175-78; *Doctor's Ass'n, Inc. v. Distajo*, 944 F. Supp. 1010, 1015-16 (D. Conn. 1996), *aff'd*, 107 F.3d 126 (2d Cir. 1997) ("A party resisting arbitration . . . must show that, if proven, [its] allegations would relieve any obligation to arbitrate, and [it] must produce some evidence to substantiate [its] factual allegations.") (internal citations and quotations omitted).

"If a court determines that the parties before it have entered into an agreement to arbitrate certain (but not all) presented claims, then, in accordance with the FAA, the court must compel arbitration and stay [the] action that is subject to arbitration until the arbitration is complete." *Jordan-Rowell*, 2019 WL 570709, at *9 (internal quotations and citation omitted) (alteration in original). In determining whether to compel arbitration, the Second Circuit has instructed that a court is obliged to consider four factors: (1) whether there has been an agreement to arbitrate; (2) whether the scope of the arbitration agreement covers the dispute at issue; (3) if federal statutory claims exist, whether Congress intended those claims to be non-arbitrable; and (4) if only some of the claims are subject to arbitration, whether the court should stay the remaining claims pending arbitration. *See JLM Indus. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004); *see also Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998).

**II.     Defendants' Motion to Dismiss**

Defendants do not challenge the sufficiency of the allegations contained in the amended complaint. Rather, Defendants move to dismiss the amended complaint because "Plaintiff's claims against Defendants are within the scope of Defendants' respective Arbitration Agreements with FFC, and because FFC has previously submitted the *same* claims to arbitration thereunder." Docket No. 7-1 at 4. Defendants argue that dismissal is appropriate because (1) the arbitration provision permits litigation on injunctive relief only; (2) even if the arbitration provision permits FFC to elect between litigation and arbitration, FFC elected to arbitrate its claims; and (3) the issue of whether the claims are within the scope of the arbitration provision should be determined by an arbitrator in the first instance. *Id*. at 13-16.

For the reasons explained below, the Court finds that the parties did not agree to arbitrate the claims asserted by Plaintiff in the amended complaint. Accordingly, Defendants' motion to dismiss and/or to compel arbitration is denied.

**A.     Litigation of Claims for Violations of Paragraphs IV Through VI of the Agreement is Permitted Under the Arbitration Provision.**

The Court has reviewed the employment agreements signed by defendants Lo Bue and Kelly, including the provision in those agreements governing arbitration. *See* Docket Nos. 8-1 (Lo Bue employment agreement) and 9-1 (Kelly employment agreement). The arbitration provision included in both employment agreements states, in relevant part:

**XVI. ARBITRATION**

The Employee acknowledges and agrees that any and all disputes or claims relating to or arising out of the Employee's performance of services for the Company or otherwise, or the termination of same, or any future dispute concerning this Agreement or any alleged breach thereof, or any future dispute of any kind whatsoever between the Employee and the Company, including any of its parent, subsidiary or related corporations, officers, shareholders, employees, directors, representatives or agents, including but not limited to statutory claims of employment discrimination, harassment or retaliation arising under the New York Law, the Employee Retirement Income Security Act ("ERISA"); Title VII of the Civil Rights Act of 1964 ("Title VII"); the Age Discrimination in Employment Act ("ADEA"); the Americans With Disabilities Act ("ADA"); the Older Workers Benefit Protection Act ("OWBPA"); the Worker Adjustment and Retraining Notification Act ("WARN"); the Family and Medical Leave Act ("FMLA"), State wage and hour laws, the United States Constitution and any other federal, state or local statutory employment law, or claims of any nature based on contract or tort (*except for any dispute involving the Employee's alleged breach of the obligations contained in paragraphs IV through VI which may be raised in a court of law*) shall be submitted and resolved by final and binding arbitration before the American Arbitration Association ("AAA"), with the prevailing party to recover costs and reasonable attorneys' fees. Either party shall be entitled to commence the arbitration proceeding directly with the AAA within the statute of limitations governing each claim and, after appropriate notice to the other party, the AAA shall proceed to hear and decide the matter even if any party so notified of the proceeding should refuse to participate. . . . The parties shall have the right to engage in the limited discovery required by law as determined by the neutral arbitrator. The neutral arbitrator shall be authorized to award the full range of relief available in a civil action. The arbitrator will also be required to issue a written decision setting forth essential findings and conclusions. The Employee acknowledges that s/he is aware of state and federal administrative agencies and courts before which the Employee can assert the claims described in this paragraph, and that by agreeing to arbitrate all claims, the Employee voluntarily waives any right to bring them before such agencies or courts. **THE EMPLOYEE SPECIFICALLY UNDERSTANDS AND CONSENTS THAT ANY AND ALL DISPUTES SHALL BE SUBMITTED TO ARBITRATION AND HEREBY**

**KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY WAIVES ALL RIGHTS TO A JUDICIAL DETERMINATION OF THESE MATTERS, INCLUDING THE RIGHT TO A TRIAL BY JURY.**

Docket Nos. 8-1 at 6-7, 9-1 at 6-7 (italics and underline added, bold and capitals in original). The Court may consider the employment agreements executed between Plaintiff and each of the Defendants, including the arbitration provision. *VTech Holdings Ltd. v. Lucent Techs., Inc.*, 172 F. Supp. 2d 435, 437 (S.D.N.Y. 2001) (in deciding motion to dismiss for failure to state claim, the court "may consider documents referenced in the complaint and documents that are in the plaintiff's possession or that the plaintiff knew of and relied on in bringing suit."); *see also Bensadoun*, 316 F.3d at 175 (summary judgement standard appropriate where the district court is required to determine arbitrability).

Plaintiff contends that, although there is an arbitration provision included in the employment agreements, that provision explicitly excludes from mandatory arbitration the claims asserted by it in the amended complaint. *See* Docket No. 11 at 7. Plaintiff points to the language contained in a parenthetical that excepts from arbitration "any dispute involving the Employee's alleged breach of obligations contained in paragraphs IV through VI which may be raised in a court of law). . . "[2] *Id*.

The Court agrees with Plaintiff that the arbitration provision clearly excludes from mandatory arbitration any claims involving a

---

[2] Paragraphs IV through VI of the employment agreements address restrictive covenants, non-disclosure of confidential information, and the return of confidential information. *See* Docket Nos. 8-1 at 4-5, 9-1 at 4-5.

breach of the obligations contained in paragraphs IV through VI of the agreement. Further, the employment agreements clearly state that any such claims may be raised in a court of law.

Defendants urge the Court to "reject such an interpretation" for several reasons, including that the next provision of the employment agreement "clarifies that FFC may seek *injunctive relief in court* on precisely those claims." Docket No. 7 at 11-12. Defendants argue that if the language contained in the parenthetical was intended to open claims for violation of paragraphs IV through VI to all forms of litigation, "the far more detailed description of the precise nature of court litigation at issue would be rendered superfluous." *Id*. at 12; *see also id.* at 13-14. Defendants are referring to Section XVII of the employment agreements, which addresses injunctive relief:

> **XVII.     INJUNCTIVE RELIEF**
>
> Notwithstanding the terms contained within the foregoing Section XVI, the Employee hereby acknowledges and agrees that any violation or threatened violation of Sections IV through VI of this Agreement, including each of their subparts, will cause immediate and irreparable harm, injury and damage to the Company for which there exists no adequate remedy at law. Accordingly, the Employee acknowledges that the remedies of injunctive relief and specific performance shall be available to the Company in the event of any such violation or threatened violation of Sections IV through VI of this Agreement, in addition to any money damages or other legal or equitable remedies and further consents to the personal jurisdiction and venue of the federal and state courts located within New York. . . .

*See* Docket Nos. 8-1 at 7, 9-1 at 7.

Defendants' interpretation of this provision is problematic for two reasons. First, while the arbitration provision addresses the

different types of claims an employee may bring and whether those claims would be subject to arbitration, the arbitration provision does not specifically address injunctive relief. That being the case, the injunctive relief provision is not superfluous.

Second, the injunctive relief provision specifically states that the employee may seek both injunctive relief and specific performance for claims arising under paragraphs IV through VI of the agreement, "*in addition to money damages or other legal or equitable remedies*." Docket Nos. 8-1 at 7, 9-1 at 7 (emphasis added). This clarification is followed by language relating to personal jurisdiction and venue in court. *Id*. at 7 (the employee "further consents to the personal jurisdiction and venue of the federal and state courts located within New York."). That being the case, the Court does not read the employment agreement as allowing Plaintiff to seek only injunctive relief for violations of paragraphs IV through VI.

"While there is a federal presumption in favor of arbitration, 'it is equally clear that federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its intended scope.'" *Bausch & Lomb Inc. v. Sarfarazi*, No. 09-CV-6041, 2013 WL 3967994, at *5 (W.D.N.Y. July 31, 2013) (quoting *McDonnell Douglas Finance Corp., v. PA Power & Light Co.*, 858 F.2d 825, 831 (2d Cir. 1988)); *see also Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) ("[A]rbitration is a creature of contract, and a person may only be compelled to arbitrate a dispute to the extent that he has agreed to do so."). Interpreting paragraphs XVI and

XVII of the employment agreement to require the parties to arbitrate all claims—including those for violations of paragraphs IV through VI of the agreement—is contrary to the plain language in the agreement. Defendants' motion to dismiss the amended complaint on this ground is denied.

**B.** **<u>Defendant is Not Entitled to Dismissal of the Amended Complaint Based on the Prior Arbitration Proceedings.</u>**

Defendants next contend that, even if the employment agreement permitted Plaintiff to choose between arbitration and litigation, Plaintiff chose to arbitrate its claims, and therefore is barred from litigating the same claims in court. *See* Docket No. 7 at 14-15.

Both Plaintiff and Defendants have submitted declarations from their attorneys describing the arbitration proceedings that occurred between the parties. *See* Docket Nos. 11-1, 14. As explained above, the Court may consider these declarations on the motion to dismiss. Plaintiff submits that in March 2018, Defendants filed separate arbitration actions against FFC with the American Arbitration Association (AAA), seeking recovery of commissions they claimed were owed to them. *See* Docket No. 11-1 ¶ 4. In April 2018, FFC responded to Defendants' arbitration demands, and filed counterclaims for Defendants' breach of their employment agreements and breach of their fiduciary duties. *Id*. ¶ 5. Following the commencement of the arbitration proceedings, neither defendant actively participated in the arbitrations for months. *Id*. ¶ 6. In October 2018, defendant LoBue retained

-14-

counsel; a hearing on his claims occurred, and all of his claims against Plaintiff were denied. *Id*. ¶ 7. FFC and defendant Kelly began settlement negotiations in July 2018; however, in November 2018, it was determined that no settlement could be reached. *Id*. ¶ 8. According to Plaintiff, the parties did not engage in "meaningful discovery" as to its counterclaims; neither defendant responded to Plaintiff's counterclaims; and the arbitrators did not consider or rule on any motions concerning the counterclaims. *Id*. ¶ 9. FFC ultimately withdrew its counterclaims without prejudice in both arbitrations, and informed Defendants that it would prosecute its actions for violations of paragraphs IV through VI of the employment agreements in court. *Id*. ¶ 10. FFC withdrew its claims in the LoBue arbitration in September 2018, and in the Kelly arbitration in late 2018/January 2019. *Id*. Neither defendant objected to FFC's withdrawal of the counterclaims. *Id*. ¶ 11.

Defendants contend that the parties engaged in discovery relevant to Defendants' initial arbitration claims and FFC's counterclaims. *See* Docket No. 14 at ¶¶ 3-9. Defendants also contend that they did not become aware of FFC's intention to drop its counterclaims until May 16, 2019, after FFC commenced this action. *Id*. ¶ 10.

The parties dispute the standard the Court should apply in determinating whether Plaintiff has waived its right to pursue litigation. Plaintiff cites to the standard for determining whether a party has waived its right to arbitration, which includes: (1) the time elapsed from when litigation was commenced

until the request for arbitration, (2) the amount of litigation to date, including motion practice and discovery, and (3) proof of prejudice. *See* Docket No. 11-1 at 18 (citing *PPG Industries, Inc., v. Webster Auto Parts, Inc.,* 128 F.3d 103, 107 (2d Cir. 1997)). Defendants argue that "[i]n contrast to waiver of the right to compel *arbitration*, waiver of the right to pursue *litigation* . . . is readily inferred," and contend that the existence of a broad agreement to arbitrate creates a presumption of arbitrability. *See* Docket No. 15 at 7. They cite *CPR (USA) Inc. v. Spray*, 187 F.3d 245, 254 (2d Cir. 1999), where the Second Circuit stated that the "existence of a broad agreement to arbitrate . . . creates a presumption of arbitrability, which is overcome only if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute [and] should be resolved in favor of coverage.'" *Id*. (quotation omitted).

As explained above, it is clear from the employment agreements that claims for violations of paragraphs IV through VI are excepted from the arbitration provision. Defendants do not explain how the scope of the arbitration clause is relevant to whether Plaintiff, by its actions, waived its right to litigation by participating in the arbitrations that Defendants themselves filed. Likewise, Defendants do not cite any case law holding that the factual situation presented in this case would result in the waiver of Plaintiff's right to litigate its claims in court.

The differing accounts provided by Plaintiff and Defendants of the events that occurred during the arbitration, as well as the scope of the arbitration, raise issues that are not appropriate for the Court to decide at this stage of the litigation. For the above reasons, Defendants' motion to dismiss the amended complaint on this ground is denied.

C. **Arbitrability is Properly Considered by the Court.**

Finally, Defendants contend that the issue of whether Plaintiff's claims are within the scope of the arbitration provision should be determined in the first instance by an arbitrator. Docket No. 7 at 15. Specifically, Defendants contend that the employment agreements "incorporate the AAA Employment Arbitration Rules, pursuant to which the 'a*rbitrator* shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" *Id*.

"The law generally treats arbitrability as an issue for judicial determination 'unless the parties clearly and unmistakably provide otherwise.'" *NASDAQ OMX Grp., Inc. v. UBS Securities, LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (quoting *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83 (2002)). The Second Circuit has found that arbitrability will be an issue for the arbitrator "where a broad arbitration clause expressly commits all disputes to arbitration . . . [because] *all* disputes necessarily includes disputes as to arbitrability." *Id*. (citing *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996)). However, that same

-17-

analysis does not apply "where a broad arbitration clause is subject to a qualifying provision that at least arguably covers the present dispute." *Id*. (citing *Katz v. Feinberg*, 290 F.3d 95, 97 (2d Cir. 2002)). Rather, "[i]n such circumstances, [the Court] [has] . . . identified ambiguity as to the parties' intent to have questions of arbitrability—which would include whether a dispute falls within or outside the scope of the qualifier—decided by an arbitrator." *Id.*

The employment agreements executed between FFC and Defendants are silent as to who should decide arbitrability, specifically. While the arbitration clause is broad, and commits a majority of disputes between the parties—including those arising under New York or Federal law—to arbitration, it also contains a carve-out provision for violations of paragraphs IV through VI of the agreement (*i.e.*, the solicitation and hiring of current employees, as well as the non-disclosure and return of confidential information). As they are plead in the amended complaint, Plaintiff's claims stem from violations of paragraphs IV through VI of the employment agreement (*see* Docket No. 1-3). For example, paragraphs 70 through 73 of the amended complaint are entitled "Lobue, Kelly and Miller Violated Their Employment Contracts." *See* Docket No. 1-3 at 18. The amended complaint further alleges that Defendants violated "Article IV (Non-Solicitation)" as "throughout 2017, the meetings that LoBue, Kelly, and Miller held with the Paramus employees were specifically for the purpose of 'soliciting' and delivering them to AnnieMac. . . ." *Id*. ¶ 70. The amended

complaint also alleges that Defendants violated "Articles V and VI" by using for their benefit, and failing to return, confidential information belonging to FFC. *Id*. ¶¶ 71-73. Because the qualifying provision (*i.e.*, "except for any dispute involving the Employee's alleged breach of the obligations contained in paragraphs IV through VI which may be raised in a court of law") "at least arguably covers the present dispute," the Court cannot conclude that the parties "clearly and unmistakably" committed questions of arbitrability to an arbitrator, rather than to the Court. *See NASDAQ OMX Grp., Inc.*, 770 F.3d at 1032.

Contrary to Defendants' contention, the employment agreements do not clearly incorporate the AAA Employment Arbitration Rules. While the arbitration provision directs that arbitration should proceed before the AAA (*see* Docket Nos. 8-1 at 7, 9-1 at 7 (providing that disputes shall be "submitted and resolved by final and binding arbitration before the American Arbitration Association")), it does not provide that all disputes between the parties are subject to AAA rules. As explained by the Second Circuit in *NASDAQ OMX Grp., Inc.*:

> the [Agreement] does not clearly and unmistakably direct that questions of arbitrability be decided by AAA rules; rather, it provides for AAA rules to apply to such arbitrations as may arise under the Agreement. As noted . . . the Services Agreement carves out certain issues from arbitration, a circumstance that thus delays application of AAA rules until a decision is made as to whether a question does or does not fall within the intended scope of arbitration, in short, until arbitrability is decided. Thus, this case is not akin to those in which we have construed the incorporation of AAA rules into an agreement with a broad arbitration clause

>     to signal the parties' clear and unmistakable intent to
>     submit arbitrability disputes to arbitration.

770 F.3d at 1032. As noted above, the arbitration provision in the employment agreements executed between Plaintiff and Defendants carves out certain issues from arbitration, including violations of paragraphs IV through VI of the employment agreement. The Court finds that the Second Circuit's analysis in *NASDAQ* applies. Accordingly, the Court denies Defendants' motion to dismiss the amended complaint on the ground that the dispute must be submitted to an arbitrator.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss and/or to compel arbitration is denied. Defendants are directed to file an answer to Plaintiff's amended complaint within 20 days of the date of this Decision and Order.

**ALL OF THE ABOVE IS SO ORDERED**.

*s/ Michael A. Telesca*

HON. MICHAEL A. TELESCA
United States District Judge

Dated:     November 13, 2019
           Rochester, New York